In the Interest of C.R.W., B.W., and A.N.W., children

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-185-CV

IN THE INTEREST OF

C.R.W., B.W., AND A.N.W., CHILDREN

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Sunshine W. appeals the trial court’s order terminating her parental rights to her children, C.R.W., B.W., and A.N.W.  In one issue, she challenges the factual sufficiency of the evidence supporting the trial court’s findings that she had (1) knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; and (3) constructively abandoned the children.  We will affirm.

The children first came into the State’s care on February 10, 2002 after their father, with whom they had been living, immersed then three-year-old A.N.W. in scalding water for wetting his pants.  An investigator for Texas Department of Protective and Regulatory Services (TDPRS)
(footnote: 2) testified that after Sunshine heard from the boys’ grandfather that her sons had been placed in foster care, Sunshine contacted TDPRS on February 14, 2002 and expressed her desire to be reunited with her children and her willingness to comply with a service plan that TDPRS would recommend. 

On February 20, 2002, the trial court held an adversary hearing, found that placing the boys with Sunshine was not in their best interest, and appointed TDPRS temporary managing conservator of the children.  The trial court also ordered Sunshine to take certain actions to obtain the return of the children, including attending counseling sessions and parenting classes, submitting to psychological, drug, and alcohol testing, complying with the service plan formulated by TDPRS, and maintaining stable housing and employment.

The court appointed the boys’ maternal grandparents as their temporary possessory conservators on July 29, 2002, but three months later the grandparents requested TDPRS to find another placement because they were moving out of state and could not take the boys with them.  The boys’ TDPRS case worker testified that the grandparents told her they had agreed to take the boys on a temporary basis while Sunshine worked towards completing the court-ordered actions necessary to regain custody of her children, but they did not feel that Sunshine was making efforts to comply with the service plan.  The case worker further testified that she attempted to help Sunshine obtain Section 8 housing and even provided $200 through TDPRS to help her pay past due utility bills so that she could qualify, but Sunshine did not provide the required documentation to the local Section 8 office and failed to keep her appointment with the housing authority to obtain a housing voucher.

By August 2003, however, Sunshine had an apartment and a job at a fast food restaurant in Wichita Falls and had secured licensed day care for the boys, so the trial court appointed her temporary possessory conservator of the boys on August 14, 2003.  But in early September, Sunshine admitted to the boys’ case worker that she was on the verge of eviction and that the power to her apartment had already been turned off once; the case worker testified that by mid-October, Sunshine had been served with an eviction notice and had been fired from her job because she had failed to show up for three shifts.

Furthermore, a Wichita Falls TDPRS case worker testified that Sunshine had a history of involvement with Jason Couffer, who was on probation for possessing methamphetamine and who, according to a police report provided to TDPRS, had once pushed Sunshine out of a moving vehicle.  Sunshine represented to the Wichita Falls case worker on August 28, 2003 that Jason did not live with her and the boys in her apartment and that she no longer had a relationship with him.  However, Sunshine later admitted to the trial court that Jason had actually been in her life for the previous two years and that she was having difficulty removing herself from him.
(footnote: 3)
 Indeed, TDPRS received a referral on October 28, 2003 reporting that when Jason’s mother went to pick Jason up at Sunshine’s apartment, Sunshine chased Jason’s mother with a knife.  This referral further reported that both Jason and Sunshine were “high on crack cocaine” and that the three boys all witnessed this incident.  According to an affidavit filed by another Wichita Falls case worker, Jason said that Sunshine actually chased him with a steak knife, that it was not the first time she had chased him with a knife, and that their relationship was becoming more and more violent.  Jason’s mother told the case worker that when she arrived at Sunshine’s apartment, Jason came to the door with scratches all over his face, and she knew they had been fighting.  As Jason and his mother tried to drive away, Sunshine opened the car door and attempted several times to drag Jason from the car as B.W. and A.N.W. watched.

The boys also told this case worker that they had witnessed violence in the home; B.W., the middle child, said that Sunshine tried to beat Jason up because Jason had taken her money, and C.W., the oldest child, said that Sunshine “chased Jason in the car” because Jason had taken her money. A.N.W., the youngest, said that Sunshine and Jason had a fight because Jason took her money and that Sunshine said some “bad words” to Jason.

The boys’ case worker testified that TDPRS had requested Sunshine to undergo court-ordered drug screens in June and September 2003, but Sunshine did not show up at either time.  After the fight between Sunshine and Jason, TDPRS again requested her to take a drug test.  This time, Sunshine did submit to the drug test, which returned positive results for both cocaine and marijuana. Sunshine’s attempts to complete other court-ordered services were similarly sporadic; according to the boys’ case worker, Sunshine attended only three parenting classes and five individual counseling sessions, and after the boys moved in with her in August 2003, she failed to attend any family counseling sessions at all.

TDPRS returned the boys to foster care on November 13, 2003.  According to their foster mother, the boys’ behavior had regressed “back to square one” after being with their mother; the oldest was not doing well in school, the middle child could no longer tie his shoes or bathe or dress himself, and the youngest was having accidents in his pants.  The boys’ case worker testified that after the boys were removed from Sunshine’s home in November, Sunshine moved out of state and did not contact TDPRS until she called on February 13, 2004.  Sunshine was informed that the termination trial was set for March, but she said that she was planning to return to Texas in April to attend a drug rehabilitation program.  Sunshine visited the boys on March 17; the case worker testified that the visit was “wonderful” but that Sunshine told her that she knew she could not take care of the boys, so she wanted them to be placed with a family member so that she could watch them grow up.

Sunshine then entered a drug rehab program and did not attend the bench trial, held on March 23, 2004, in which the judge found by clear and convincing evidence that Sunshine had endangered her children or allowed them to be endangered, that Sunshine had constructively abandoned the children, and that termination of Sunshine’s parental rights was in the children’s best interest.

Sunshine complains that neither the single incident involving her fight with Jason on October 28 nor her drug problem can, standing alone, form the basis of a termination decree.  Sunshine also complains that because she did not directly abuse the children, the most the State can establish is that she was “mired in a poor financial condition.”  However, the evidence showed that this financial condition resulted from her own conduct; even though the court ordered Sunshine to maintain stable housing and employment, she failed to follow through when TDPRS attempted to help her secure Section 8 housing, and she had no income because she was fired for failing to show up to work.  Furthermore, as detailed above, there was evidence of endangerment through the history of violence between Sunshine and Jason, Sunshine’s noncompliance with court-ordered services, and Sunshine’s inability to keep a job or maintain stable housing in addition to the evidence of the fight and her use of cocaine and marijuana.  

Therefore, based on the appropriate standard of review,
(footnote: 4) we hold that the evidence is factually sufficient to support the trial court’s findings that Sunshine knowingly placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being and engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being.
(footnote: 5)  
See
 
Tex. Fam. Code Ann.
 § 161.001(1)(D), (E) (Vernon 2002).  We overrule Sunshine’s sole issue and affirm the trial court’s termination order.

PER CURIAM

PANEL F: MCCOY, GARDNER, and WALKER
, JJ.

DELIVERED:  December 9, 2004

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Effective February 1, 2004, the name of the agency changed to the Texas Department of Family and Protective Services.  However, for the sake of consistency in this case, we will continue to use TDPRS when we refer to the agency.

3:
TDPRS then attempted to develop a service plan for Jason as well, but he did not return messages left by TDPRS case workers, and Sunshine indicated that he was not interested in participating in any services offered by TDPRS.

4:
See Santosky v. Kramer
, 455 U.S. 745, 759, 102 S. Ct. 1388, 1397 (1982); 
In re C.H.
, 89 S.W.3d 17, 25 (Tex. 2002); 
Tex. Dep’t of Human Servs. v. Boyd
, 727 S.W.2d 531, 533 (Tex. 1987); 
Holick v. Smith
, 685 S.W.2d 18, 20 (Tex. 1985).

5:
Because we hold that the evidence is factually sufficient to support the trial court’s findings under section 161.001(1)(D) and (E) of the Family Code, we need not address the trial court’s finding that Sunshine constructively abandoned the children because only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest.  
See In re A.V.
, 113 S.W.3d 355, 362 (Tex. 2003).  Sunshine does not challenge the trial court’s finding that termination was in the boys’ best interest.